The court will call Berdiev v. Garland. This is 20-9542, and this is the only case that we're going to hear this afternoon, and so we'll start with Petitioner's Counsel. Good afternoon, and may it please the court. I am Andrew Bramante for Petitioner Tojadin Berdiev. I'll try to reserve two minutes for rebuttal. The Board of Immigration Appeals erred as a matter of law when it held that Mr. Berdiev is ineligible to adjust status, and when it failed to state or apply the correct standard for due diligence. The Board held that Mr. Berdiev is barred for 10 years from adjusting because he didn't leave the United States during his voluntary departure period, but the Board ignored matters of MIJUSCA that holds that there is no penalty where one's attorney does not inform one of the voluntary departure period until after it has expired. The Board irrationally and repeatedly confused being informed of the voluntary departure period with being informed previously of the consequences for failing to appear, failing to depart. I hate to interrupt you so early, but can I ask you just a clarifying question that is more record-based? Twice in your reply brief, you said that the BIA, both in denying the second motion to reopen and in denying the motion to reconsider, for sua sponte reopening had relied solely on the 10-year departure mark. I've read and I've reread and I've reread both the ruling by the BIA on the second motion to reopen and the order on the reconsideration, and I just frankly don't see what you're referring to because it seems to me that the BIA did not isolate that as the only ground. It seems to me that they considered both that and the timeliness issue together, both for purposes of the second motion to reopen and for sua sponte reopening. Am I misreading the opinions? I guess I read it differently, Your Honor. You might be right, I just don't know what you're basing that on. I was basing it on the way they had structured the discussion, at least in one of them, I can't tell you which one, in which they talked about equitable polling and the diligence requirement, and that seemed separate to me from their discussion of sua sponte reopening where they really only said that because he's not eligible to adjust status, there's no purpose of reopening. Okay, thanks. In telecommunications v. commissioner, this court stated that it is not a second shot forum for parties to raise arguments for the first time. Three times below, the government waived argument on two facts that are critical to this case, and that those facts are therefore undisputed for the purpose of this court's review. First, Mr. Berdyov's attorney did not inform him of that 60-day voluntary departure period until after it expired, and second, Mr. Berdyov did inform his attorney of his change of address four months before the board issued the decision triggering the 60-day period. Let me kind of press you on that, Mr. Brabante. Now, certainly, counsel ultimately acknowledged that there is a letter in the file showing that his address was identified as the one, I think, on Dexter Street, but I don't know that they ever were able to articulate or ever knew or suggested that they knew when that letter had arrived in their file. That is correct. They did say that there was a letter in the file dated October 20th, 2014, in which the new address was given, and that that was contemporaneous with a conversation that Mr. Berdyov had with attorney Hyman regarding his address, and then further, they did mention that by January, a month before the board's decision, the new address was paralegal. Doesn't that overstate it, though? Because it's not as though he ever said to that law firm, I have moved to this new address. Please forward my mail there. Instead, he comes in to meet with the paralegal, I think, and her recollection is they were confused about the address, and his life is somewhat in turmoil if you look at the letters that are going back and forth. He's got his wife on the other side, and the marriage apparently not being a winner at that point. And so, it's kind of up in there where he's living from time to time and so forth. Why shouldn't it be on him to come in and say, forward all my mail to this new address, and that's not in the record that something like that happened. As an immigration attorney, when we and if they mention a possible change of address, understanding how important it is, it's incumbent upon us to pursue that. And it sounds like they did have that conversation in October, and Mr. Berdyuk did provide a letter indicating that he had moved changed address, dated again October 20th. The fact that that same address then shows up in a petition, I think, is fairly good evidence. The key thing here, though, I think, is that the government has never broached this issue. They've never challenged those facts until now. And on those undisputed facts, I believe that the court can and should hold as a matter of law that Mr. Berdyuk is prima facie eligible to adjust status. And the board then, on remand to the board, the board can determine, based on that holding, whether it will reopen his case sua sponte. Now, if we do not read the BIA's two rulings the way you did, and we interpret the BIA's decision to rely not only on the tenure departure bar, but on timeliness, you would have to win on both of those to recover relief on either the sua sponte reopening or the denial of the motion to reopen, right? I think that if the board was clear that either one of those issues was dispositive to the exercise of their sua sponte authority, then you would be right, Judge Bachrach. But I don't think that they are clear. I don't think that, as I said, I don't think that you can, there's even more than a hint that sua sponte consideration was part of their discussion on discretion. Certainly it wasn't clear. And since it is a totality of the circumstances issue, if they make their holding in part, whether in part or in total, based on a misunderstanding of the law, then I think that remand is in order. As to the issue of diligence, I think that it's very important that, to note, that nowhere below did the government challenge the standard that we've proposed, that we believe is the correct standard, where one's individual circumstances are considered. And in Mr. Berdyuk's case, again,  unsophisticated individual, and there were four key facts that framed his individual circumstances. The first one is that it took five years to have his case go through immigration court. It took over two years for the board to issue a decision on his appeal. He was used to having an attorney who he could rely on, who was competent, and who had his best interests at heart, who simply made a clerical error. So when his next attorney told him, everything's going to be fine, get divorced, get married, I'm going to take care of this, he had every right to trust that that attorney was looking out for him. And so when he was checking with that attorney every 60 days, I believe it was entirely reasonable for a person in his circumstances not to immediately suspect his attorney was playing games with him. Particularly, and I think it's particularly noteworthy, that the only bad thing that he could really understand that happened to him is he didn't learn of the BIA's decision for more than 60 days. And that caused problems. So what did he do? He checked with that attorney every 60 days. For an unsophisticated person, I think that kind of persistence is both reasonable, it's even smart, and commendable. But didn't the attorney refuse to take his calls? And didn't the wife of the attorney even say, stop bothering us? That's a little different. Stop bothering us is a little different from saying, we're not your attorney anymore. I mean, I suppose stop bothering us could be construed by him as meaning, we're on top of it, we'll let you know when there's something going on. And I think that given all the attorney's prior assurances, that was the context. That, leave us alone, we're going to let you know. You know, we all have clients like that. That, you know, we tell them, look, it could take a long time. Right now, it's taking USCIS two, three years to adjudicate a lot of different forms. And some people are nervous nellies. They, you know, call us frequently and we have to tell them again, gee, you know, no decision yet. And it's possible that this attorney was telling them, look, stop bothering me. But that, I think that means something different than I'm withholding information from you. My question really is that under Zmijewski, which says the test is whether he let the time period elapse through no fault of his own, which the court did not address, did not address that case, did not use that language of the test, but the court did address that he wasn't entitled to equitable tolling. So, my question is, once the BIA said you are not entitled to equitable tolling, is that the same as saying you aren't entitled to relief because of no fault of your own? Or is there a difference? And where is the daylight difference between those two tests? Because the court clearly addressed one test. Yeah, I think there's a lot of, I think there's substantial daylight. You could not be eligible for equitable tolling for a number of reasons. It could be that he didn't, he did not prove that his first, excuse me, that his second attorney was ineffective as a matter of law. He could have, the court simply could have been dissatisfied with his reasonable diligence challenging, finding his third attorney. That's different from whether or not he was at fault allowing his first attorney to find, to know that he had changed address. I think the only reasonable issue that the government could have raised below, which they didn't, was that his notification of his attorney of his change of address, you know, never happened. But again, I believe that was, that argument is waived and there is a lot of good evidence in the court's attention, especially the Hyman letter has a lot of indicia of unreliability. It's unsigned, it's not on firm letterhead, and it's clearly self-serving because it's in response to a grievance with the Colorado Attorney Regulations Committee. I'll reserve the rest of my time for rebuttal if the court is involved. Let's stop the clock. Judge Bell, do you have any additional questions? No. Judge Phillips? No, thanks. Okay, thank you. We'll hear from respondents. Good afternoon, your honors. May it please the court. Jessica Lesnau on behalf of the Attorney General. The Board of Immigration Appeals has broad discretion to deny a motion to reopen and the movement bears a heavy burden to demonstrate his motion should be granted. The court here should deny the petition for review because the agency acted within its broad discretion in denying petitioner's second motion to reopen, which was filed nearly six years after the board's final order of removal. But do you agree with the general proposition that if the BIA exercises its discretion on the basis of an error of law, that that is an abuse of discretion? And if you agree with that, which I think is probably not very controversial, didn't the reason that the BIA exercises discretion state that you have no merit, you can't, you have no status to get an adjustment because you overstayed your departure date, that that is an error of law because whether he overstated his departure date or not depended on whether he knew the departure deadline. And Chmielewski says, if you didn't know it, you didn't overstay. And so if there's an error of law, then hasn't the BIA just by definition abused his discretion? I mean, the standard here certainly allows the court to consider whether the board abused its discretion by committing an error of law. But the threshold inquiry for a motion to reopen that is on its face, an untimely motion to reopen by regulation is unreviewable by the board. And so in order to even get to the motion to reopen, the board had to consider whether it could equitably toll that filing deadline in order to look at a petitioner's motion to reopen before it could then move on to the question of even if they had equitably told the filing deadline, which they did assume in making this the second part of their decision, whether petitioner was then prima facie eligible for the relief that he sought, which was adjustment of status. So getting back to the issue of equitable tolling, the board said petitioner did not demonstrate the diligence required that to merit equitable tolling and his argument that he exercised diligence because he did not learn of the filed by attorney Mr. Zyankovic is not supported by the evidence. So the board's first decision was mailed to petitioner's attorney and then directly to petitioner and that this was petitioner's correct address can also be identified by the fact that petitioner's counsel at that time filed a entry of appearance with the board. That would be at page uh just after page 40 of the record is the entry of appearance. But we know from that very same counsel that they did acknowledge in this October letter that they had a letter from Mr. Berdia telling them that that was no longer his address, that he was now on maybe getting them confused with 801 Decker Street. So so yeah sure that's therein lies the problem isn't it is that the lawyers said yes and they're sending the stuff to the same place that the immigration judge is there's only one problem he doesn't live there and he's already told the lawyer that he doesn't live there. Well your honor what I was referring to was uh the board's decision as it related to um that the address issue as it relates to petitioner's counsel on his first motion to reopen the um Davies law firm that relates to whether he could show prima facie eligibility for relief. That is uh whether he indeed knew or should have known that he was to voluntarily depart. So if your honor would like I could I could address that issue but when I um when I referring to the decision being mailed to petitioner I was referring to the board's denial of its uh of petitioner's first motion to reopen. So that would be the board's um August 30th 2016 denial. I think I'm understanding exactly what you're saying but I I'm still a little confused because that that's his that's his argument. I I had no idea that that decision had been issued because they sent it to my old address. I had already moved to Decker street. I told my lawyer they acknowledged two different lawyers acknowledged that they had a letter in October uh or dated October saying that he no longer lived at the address in which the BIA had sent its denial of the first motion to reopen. So yeah I mean I don't understand how your argument has anything to do with Mr. Berdia's argument. Certainly so I'm referring right now your honor to the um to the board's finding of due diligence that petitioner did not demonstrate due diligence but what I can address um secondary to that is its is its is its determination as it related to uh through no fault of his own uh not voluntarily departed. So he failed to depart after being granted voluntary departure. First the immigration judge granted him voluntary departure then the board entered a decision on the appeal of that initial IJ determination and the board reinstated the 60-day uh voluntary departure period. So as it relates to that decision petitioner states that he was not made aware of the voluntary departure period's reinstatement by his attorney at the time the Davies law firm and thus could not through no fault of his own have failed to depart the United States. But he didn't have to part for 60 days from the denial of the first motion to reopen correct? It was 60 days after the board entered its order on so that would have been the final order of removal. The board made a decision from his first appeal. So his first appeal from the immigration judge related to the immigration judge's denial of a continuance. The judge denied the continuance and then allowed petitioner to voluntarily depart. He appealed that decision. When the board decided that decision they reinstated a 60-day voluntary departure period. So that that final order entered in February of 2015 and petitioner saying by his attorneys the Davies law firm he was not made aware of the reinstatement of that departure period. And he points to letters from Ms. Davies and from her associate Mr. Hyman. So Judge Phillips pointed out that there are several unclear aspects of of what was going on but the record reveals that what was happening here was a complete breakdown of communication on the part of petitioner with his firm. Notably he points to the firm having a letter that they purportedly received in 2014. But if your honors will look at page 118 of the records that would be page 2 of Mr. Hyman's letter. In the first paragraph in Mr. Hyman says in review of the our records there is a letter from the client's sister dated October 2014. That indicates the client and his wife were residing with her at 1810 Dexter Court. He goes on to say I do not know when the client provided this letter. He goes on to say at no time did he contact our office and he goes on to detail that it is the firm's practice as soon as any client changes his or her address that they are to notify our staff. Now earlier in the letter as Judge Phillips also mentioned Mr. Hyman detailed that petitioner was having difficulty providing evidence of where he resided. That the address that petitioner mentions that's listed on an I-130. That I-130 was evidently according to this letter and the letter of Ms. Davies being prepared by a paralegal. Now what they were trying to do there was prepare a third I-130. That would have been a third petition filed by Ms. Quintana his prior wife on petitioner's behalf. The first two had already been denied. Now in the letter Mr. Hyman states that Ms. Quintana was not even certain whether she wanted to file that third I-130 and indeed eventually it was not with another woman at the time. Now petitioner also stated in his first motion to reopen I was that would be at page 340 of the record no excuse me page 338 at the time of the preceding Mr. Berdyev met his love Ms. Yelena Misko. The couple lived together at least since 2011. So it's reasonable here your honor that petitioner's confusion the confusion that Mr. Hyman refers to regarding the address to which Ms. Quintana should have listed on her I-130 is attributable to the fact that petitioner may very well have not been living with Ms. Quintana at the time but another woman Ms. Marisco. Are we allowed to get into the record that way and start sorting through these letters for those sorts of facts when the BIA didn't ever mention them or there's no indication that it considered them under abuse of discretion? Your honor I think the board did indicate that it considered all of the evidence submitted in petitioner's motion to reopen and I would also note that these letters were petitioner's own filings in support of his for the board. So for example the board in its first denial of petitioner's motion to reopen so that would have been the August denial they said it is asserted that the respondent received ineffective assistance by former counsel who did not timely notify him of the board's appeal and then there the board cites to petitioner's motion to reopen at page 4 and indeed petitioner's at page 4 makes that very argument that he was not informed by his counsel of the board's reinstatement of the voluntary departure order and then in the board's most recent decision so that would be the denial of the motion to reconsider issued by the board in August 2020 the board said we are not persuaded by respondents argument that he is not barred from adjustment by his failure to voluntarily depart the board went on to note that it had previously found that his argument that he was never made aware I'm sorry that where does it say the last paragraph did not establish ineffective assistance by his prior counsel in these proceedings for failure to notify him of the dismissal of his appeal so there in its denial of the motion to reconsider and in its previous decisions the board did address petitioner's argument and rejected it as it was permitted to do oh excuse me I'm in a room with automatic lighting and and so the board did not abuse its discretion and certainly indicated that it as to this and was not persuaded by it let me ask you this question to follow up with judge ebell who focused on the very important words through no fault of his own what would what would the petitioner have to show to meet the burden through no fault of his own what would he have had to do in regard to the identifying of his correct address well your honor I think that he would have needed to show that it indeed was a clerical error on the part of his prior attorney's office in not not updating his address but his prior attorneys made very clear that petitioner was quite vague about his address the law office filed I believe they said they filed with the with the board a change of address for petitioner and that change of address also indicated the 91st street address which notably is the same address to which the board mailed its decision reinstating the departure order so he would need to show that he had he had exercised diligence in informing his attorney and informing the board of his proper address now that would have that would have a perhaps that there was an abuse no abuse of discretion in denying the motion to re the second motion to reopen but he also uh filed a motion requesting as he's has the prerogative to do ask the BIA and the immigration judge to sua sponte reopen and the the immigration judge and the BIA can uh sua sponte reopen at any time without and we have uh published opinion saying that the 10-year voluntary departure bar does not preclude the BIA from sua sponte reopening so to the extent that the BIA relied on this failure to voluntarily depart after 60 days going back to Judge Bell's earlier question in a different context that is a that is a clear legal error on the part of the BIA isn't it that they that they denied sua sponte reopening at least in part and perhaps solely by virtue of this failure to voluntarily depart when our precedents preclude that from barring sua sponte reopening well your honor the board initially and it does appear that my time has elapsed but may I continue answering your question the the board did initially make a decision a determination declining sort of as a third matter if you will to exercise its sua sponte authority to reopen his proceedings so again the threshold inquiry would be could they even look at the motion because it was untimely and then the second was even considering it timely even deferring to petitioner that he merited equitable tolling he did not demonstrate he was prima facie eligible because he failed to depart pursuant to a departure order and then finally the board said even if we were to look at this in the exercise of our sua sponte authority we do not find that petitioner's circumstances are so exceptional as to warrant an exercise of this authority now in his subsequent motion to reopen to the board petitioner did not raise that sua sponte claim it was effectively waived well they they they ruled on it i mean they they on the denial of the second motion to reopen they specifically say that they are denying not only uh equitable tolling but they are saying or if you're not in fact they do that in the motion to reconsider too that they are denying not only the motion to reopen the second motion to reopen but they're also declining the uh sua sponte reopening oh you're you're right your honor i i believe i might have misstated in the second motion to reopen in the last paragraph the board says in as much as respondent is barred from the relief he seeks no purpose would be served either through equitable tolling or through sua sponte authority so that you know back to my original question with regard to that specific rationale the failure to voluntarily depart within 60 days is that not under our precedent legal error to bar sua sponte reopening i i don't think that the board is saying here your honor that he is barred from sua sponte reopening because he failed to voluntarily depart the boards and i and i should also note that uh the petitioner does not raise sua sponte or challenge the board sua sponte finding whatsoever in his briefing to this court but as it relates to this one of his reply brief i mean that's his primary argument on page one of his reply brief is that the bia i mean that's what he he's challenging equitable equitable tolling your honor and and certainly this this the board's exercise of its sua sponte authority is the test for whether it should exercise sua sponte authority is whether petitioner demonstrated exceptional circumstances meriting the board's uh reopening of its own authority sua sponte and i think what the board was saying there is that no purpose would be served because he hasn't even proved to us that he's eligible for the relief that he's seeking and so if he's not eligible for the relief he's seeking it would not merit us reopening these proceedings on our on our own authority maybe you're answering my question but it seems to be surface and i don't mean that pejoratively you're saying as i understand it that the bia said he's not eligible for sua sponte reopening because he's not eligible you've told me that he's not eligible because he failed to voluntarily disbar within 60 days from the denial of his first motion to reopen my my question has been is it legal error to preclude a petitioner from sua sponte reopening for failure to voluntarily depart within 60 days because i am under the belief perhaps incorrectly that our president specifically preclude that as a legal consideration and you said that well no the bia didn't rely on the bia will rely on in denying sua sponte reopening that he wasn't eligible that's the reason that they gave for saying he's ineligible is for a legally erroneous rationale that he failed to voluntarily depart within 60 days the fallback is that he failed to file this within 90 days the only problem with that is that's also not a valid consideration as i understand the law for sua sponte reopening because of the immigration judge can so respond to reopen at any time so even the two the only two reasons that the bia gave for saying he's ineligible for sua sponte reopening are both legally erroneous that's what i'm trying to figure out so why what what what valid legally valid argument is there that he's not eligible for sua sponte reopening your honor i to this extent i i think you know as we're looking at the board's second um well i guess it would be its third decision so it's denial of the second motion to reopen it's reaffirming its sua sponte determination that it already made in the denial of his first motion to reopen and there at page 324 of the record the board said we declined to reopen respondents removal proceedings sua sponte as there has been no showing of exceptional circumstances warranting such action and indeed it cites the regulation and it cites the board's case law which clarifies that that is the standard for the board to reopen sua sponte it then goes on to state are you saying that that there was two reasons the board wouldn't have reopened one there weren't exceptional circumstances and secondly he wasn't eligible and even if the court was even if the bia was wrong on the eligibility the first one uh moots the second issue well your honor i i suppose when you phrase it that way i might actually be arguing that there are three reasons why the board denied the first being petitioner failed to demonstrate diligence to warrant equitable tolling to allow him to of the time and number that requires that you you equate diligence with through no fault of his own because if they're not the same concept then the court never did address that second issue of zimwoski i think those are two two separate inquiries your honor um the diligence related to petitioner's actions after learning of the ineffective assistance alleged of his um attorney mr z mr zanusky um now the board's finding as it related to the no fault of his own and what petitioner calls a clerical error on the part of prior counsel is a finding as it relates to his alleged ineffective assistance of two different representatives the finding as it relates to the clerical error is attributable to he says the first attorney and the finding as it relates to his his ability to demonstrate diligence um after learning of the alleged ineffective assistance of zanusky that was his second claim of ineffective assistance does that clarify does that answer your question yeah yeah i think so and so so the board first denied because he could not demonstrate diligence to warrant equitable tolling then even considering that he had showed diligence the board second denied because he had failed to demonstrate prima facie eligibility for relief because he was barred from receiving that relief for failing to depart under a voluntary departure order and then second point we know the court the bia did not fully consider that issue because it did not consider its own precedent of uh zanusky well your honor the board the board said that the board did cite to petitioner's motion to reopen where he made that that claim of zanusky and the board rejected that argument the board is effectively rejecting the argument that that case is applicable because you think that was do you think that was saying well i don't think the case did it i don't recall that the board cited that case you're right you're right you're doing some extrapolation that they must have considered it because of the argument well your honor we're looking at whether the board uh under the abuse of discretion considered the evidence presented to it and uh did not provide any clear reliance on its own authority or explanation and it did it did cite to petitioner's motions multiple motions to reopen and its multiple prior findings on those or decisions on those motions and then it um it cited to this court's authority and its its own authority and so i don't think there's any showing here that the board abused its discretion uh when it made the determination that petitioner as it related to his ability to demonstrate prima facie eligibility for relief to show that he his proceedings could be reopened did not show that he failed to depart through no fault of his own because he could not show that he had clearly informed prior counsel of a change of address and also the board said that it mailed a copy of the decision to petitioner's address the same address that his prior counsel said was the correct address on record because they've not been informed of another clear address to which to to send him uh mail or other board determinations i hope i've i hope i've answered your question your honor yeah it's it's it's hard yeah i just want to clarify something uh just i i was thinking you said that there was a third reason uh and and i took it on the reopening and i took it that you were referring to its discretionary determination if if i'm right about that where would i find that in the bill certainly your honor i did i did say that um as judge ebel was was detailing it that in in that manner there could be considered also a third reason for the denying and as you pointed out the third reason would be uh its declination to where i'm looking at the page that would be that would be at page 3 324 of the record are you talking about the denial of the second motion to reopen correct your honor okay well i'm looking right now at the at the page that was appended and it's a three-page order are you page two page two it's page two of the board's um second decision so that is the board's denial of petitioners first motion to reopen okay the denial of the first motion to reopen is not an issue it's the denial of the second motion to reopen well the reason i refer to that your honor is because in its subsequent denials of petitioners subsequent motions to reopen the board refers back to its prior sua sponte determinations okay now now it's a little makes it a little more sense but and i'm not quarreling with you but if if i look at it uh maybe i'll just quit looking at this because i kept looking at this saying you know it's only two pages i i see nothing about a discretionary determination not to sua sponte uh reopen and you would agree on the um on the on the order that is an issue not the prior order the order that he is seeking judicial review on that there's nothing in there that the bia has decided not to so it's going to reopen based on its exercise of discretion i respectfully i do not agree with that where where okay okay so where where is it i mean in in the boards um so this case is is also consolidated with the board's denial of petitioners motion to reconsider and the board's decision on that so that would be at page three of the record or the board's august 28th 2020 decision the board also cites in a footnote footnote two we have also found no exceptional circumstances to warrant reopening out of time using the board's discretionary sua sponte authority and they again cite to the same regulation and the same authority to which it previously cited in its denial of petitioners first motion to reopen okay you're talking about maybe on rebuttal we'll find this out because i had understood that he was seeking judicial review of the two orders that he appended to his brief neither one of these are with regard to his first motion to reopen so he filed a motion to reconsider the denial of his second motion to reopen and as i understand it he is seeking judicial review i mean he appended this to his brief if i look at the denial of this let me put it this way if i look at at the the two orders that he appended to his blue brief the one that he's saying he's appealing i'm not going to find anything am i that the bia decided not to exercise his discretion to sua sponte to reopen based on its discretionary judgment correct i think those would be with regard to the first motion to reopen to reopen can you repeat that last sentence your honor you cut out briefly yeah so in other words what you're what you're relying on are the the denial of the first motion to reopen and the denial of reconsideration on the first motion to reopen if i'm right that those are not what is at issue in this appeal what's at issue is an appeal is the two orders that he appended to his blue brief then i will be looking in vain to find what you said that they never did they they never said when denying the second motion to reopen for the reconsideration of the denial of the second motion to reopen that the bia was denying sua sponte reopening based on its discretion they basically those rulings solely on ineligibility your honor petitioner petitioner is seeking review of the board's denial of his second motion to reopen so that would be the board's march 30th 2020 decision and he's seeking review of the board's denial of his motion for reconsideration of his second motion to reopen and the board issued that denial of to reconsider on august 28th 2020 so in it in its denial to reconsider petitioner's second motion to reopen that is the the board's most recent decision so that's at page three of the administrative record and i should note that these cases were consolidated the the denial of the second motion to reopen and the denial of the motion to reconsider all right and so and you're relying on a footnote which footnote footnote two of the board's denial of petitioner's motion to reconsider the second motion to reopen okay thank you and then again the board cites its sua sponte authority in the march 30th decision at page two of the decision and that's the part that you were directing me to earlier you're on that's page 40 of the record and you're you're directing me to the footnote in the august 23rd order where they were explaining why they denied the first motion to reopen they're on past tense right right well they're explaining why that they denied it previously right previously denied petitioner's prior motions to reopen so they're basically referring back to their two prior decisions that aren't that aren't an issue okay i mean that's right the the one certainly the prior the this this denial of the second motion to reopen they're also referring back to that your honor my problem with that is even if the second order clearly says by reference we're just not exercising our discretion to reopen that discretion was informed by their opinion that he was not eligible at least in part certainly yeah and that premise seems to be legally incorrect that he would be eligible if under under uh zhulovsky if he could show that it was through no fault of his that he failed to depart when required to do so so i still come down to even if they said it was discretionary that there was an error of law in not considering something that might have made him eligible when they predicated their discretion on him not being eligible i think that they considered out in sort of as a third option for reopening the third and final if you will whether they should use their own authority they considered that petitioner was not eligible for the relief he sought but they ultimately their decision was petitioner has not demonstrated exceptional circumstances and judge bacharach is right they're referring back to their prior finding on that their prior finding being in the denial of first motion to reopen so in each of these subsequent decision decisions the ward refers back to its prior findings well it might have but it but in this last order it did say there was three reasons this is on the re-hearing i think one they said burdick knew the consequences of failing to depart that of course isn't responsive he might have known the consequences but might not have thought he was failing to depart because he didn't know the dates number two birdie ever previously raised the argument about his counsel being ineffective and that may be true as well but he doesn't have to i think predicate his argument of being eligible on the ground of ineffective counsel and number three he's relitigating the issue that's false because he never raised the zarowski issue before so uh i then get down to the three arguments advanced don't seem to address it seemed to be predicated on a unawareness of a claim which wasn't asserted to him specifically but but which might have made him eligible and maybe they still could have denied the relief but they should have at least considered it i think i i think your honor uh he the board the board did not cite to me um and i want to make sure that i'm pronouncing this yeah this is called the z case the board did not refer to the decision you're you're correct but certainly petitioner did raise in his first motion to reopen that was his entire claim was i failed to depart because i was not made aware of the board's determination and the board rejected that your honor but he rejected it in the sense that the court said that was not enough to get equitable tolling i don't think the court rejected it under the grounds of well you are still at fault rather than through no fault i i respectfully disagree your honor but i think the board is under the abuse of discretion standard it indicated that it considered all of the arguments raised in petitioners multiple motions to reopen and determined that he had not persuaded the board that he had that he was eligible for relief or that that the deadline should be equitably told or that he had demonstrated an exceptional circumstance warranting the board's exercise of its sua sponte authority your honor and i see how the reference back to multiple prior decisions can be um a tedious endeavor to look through can i ask you since there's been so much discussion of sua sponte and it's important i'm looking at the regulation 1003.2 subsection a general and that first sentence speaks to sua sponte authority of the board at any time to reopen or reconsider a when the board can even do that is there is that the sum and substance of it or is there more are there other sections that give more sua sponte authority your honor i do not have a copy of that regulation in front of me and i i would hate to speak out of turn but i think the board derives its sua sponte authority from that regulation and it's further developed by case law including the board's decision in matter of jj and matter of gd to which it cited and those cases further refine that sua sponte authority to a test of whether the petitioner demonstrated exceptional circumstances which is a very very broad um showing as to whether his his case the board should basically look um beyond all considerations just raised solely in the motion and to all circumstances to determine whether his cases should be open sua sponte do you have anything uh any additional questions no i don't thank you okay judge abel no okay thank you very much uh the petitioner has some rebuttals out i'm going to try to address a couple of these questions um judge phillips the regulation that you were reading was a new regulation that went into effect on january the 15th and was enjoined by uh two federal district courts in march and therefore um we are currently relying on the old one which had language to the effect of the board may reopen or reconsider a case at any time as i agree with the government that the issues of diligence and the voluntariness of failure to depart are two separate legal inquiries i'll also call the court's attention to the fact that the first motion to reopen was denied on from an equitable tolling point standpoint on purely procedural basis uh the court never considered at all whether or not the first appellate attorney had been ineffective and therefore when the court in the motion to reconsider refers back and says we've already decided that that was also legal error they actually never made any decision with respect to the first attorney's failure to inform mr bird of the start of the 60-day period um the word also i think as several of the judges pointed out never decided the issue of whether mr bird gave notice to his attorney of his change of address as is raised now for the first time by the government um finally uh bia never rejected the idea of matters mijuska or if it did if you read that into its few statements in its response to our motion to reconsider it did so on the basis of two legal errors one believing that the court had already addressed the issue of ineffective assistance by the appellate attorney and second uh the confusion that i indicated earlier between uh being informed of the consequences for failing to depart um to you since since we're dealing today with a lot of very difficult case names um the ins which was cited by the government states that this court may not support a result reached by the agency with reasoning not explicitly relied on by the agency and i think the conversation over the last 20-25 minutes indicates pretty clearly that there were very very severe limits as to what the bia actually considered in its decision process mr bird yet has no criminal history he owns a small business he pays taxes he's married to a u.s citizen wife and they have two lovely children the ineffectiveness of two attorneys combined with the bia's not not very precise decision making has kept that family terrified of separation for the last six years and they that family deserves a resolution the court should remand to the bia to reopen and provide mr bird you have the opportunity to adjust status on the basis of his wife's approved petition and i realize i'm over time i thank you um judge help do you have any questions for the petitioner i just have this question and i'm sure the answer is obvious but i don't know it right now he he says he didn't know about the final order until later and then he found out once he found out why wasn't the why doesn't that reactivate the 60 days and he's got 60 days to depart the country the regulation does not allow for that um there's there's um it's it's the the only possible um yeah there's there's nothing there it's it's gone or or it's not when you say doesn't allow do you mean precludes or you mean doesn't speak to it it doesn't speak to it uh matters mijuska did not address it um and i've looked at all possible case law on the subject i've never seen anything to that effect okay judge let's see you have anything else i don't thank you okay uh judge abel do you no i do not all right um mr robonte um near the end of your remarks uh you had uh cited uh or in i think quoted uh a case uh was that was that case uh cited in your brief that was not cited in my brief it was raised in the government's all right it's cited in the government's brief yes okay very good well thank you uh council for both the petitioner and the respondent uh it was very well argued in the briefs and orally today uh we appreciate your indulgence in the panel i know we reeled you all uh beyond your allotted time uh and we're doing it not to us in adjudicating it so we appreciate your patience uh court will be uh in recess subject to recall